UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>  v.<br><br>THE STATE OF NEVADA, and THE OFFICE OF THE STATE CONTROLLER,<br><br>           Defendants. | 3:09-CV-00314-LRH-WGC<br><br>ORDER |

Before the court are the United States' Motion in Limine to Exclude Certain Evidence at Trial (#121), and Defendants' opposition (#136). The motion seeks to exclude evidence or argument related to seventeen issues. *See* Motion (#121), pp. 2-3. Each will be addressed in turn.

**(1) - (3)   Ingram's satisfaction of USERRA's procedural requirements**

In the Proposed Joint Pretrial Order (#105, pp. 7-8), Defendants included as issues for trial whether Arthur Ingram failed to satisfy each of USERRA's three requirements for entitlement to reemployment rights and benefits: (1) proper advance notice of military service; (2) cumulative absence not exceeding five years; and (3) submission of an application for reemployment within 90 days. *See* 38 U.S.C. § 4312(a). The United States moves to exclude evidence or argument related to each issue on the ground that the court has already granted summary judgment in favor of the United States and against Defendants on each issue. *See* Order (#102), pp. 7-12, 26, *published at United States v. Nevada*, 817 F. Supp. 2d 1230 (D. Nev. 2011). Defendants now represent they

have "no intention of raising arguments inconsistent with the Court's prior rulings."  Opposition (#136), p. 2.  As the court's summary judgment order completely resolved all three proposed issues, the motion in limine will be granted.

**(4) Controller Wallin's consideration of Ingram's qualifications for Chief Deputy**

Defendants also propose as an issue for trial: "Whether [Controller] Wallin considered Ingram no longer qualified for the Chief Deputy Controller position, or could become qualified with reasonable efforts by the Controller?"  JPTO (#105), p. 8.  The United States moves to exclude the presentation of any evidence or argument on this issue before the jury, contending that the issue is irrelevant to the retaliation claim and to the sole remaining issue on the reemployment claim—whether the "changed circumstances" affirmative defense applies—based on the court's rejection of Defendants' qualifications argument in its summary judgment order.  Also, while the United States acknowledges that qualifications is relevant to relief insofar as it is a factor in determining the appropriate position of reemployment under § 4313(a), the United States has moved the court to bifurcate the trial and hold a bench trial on relief, which would remove any § 4313 qualifications issues from the jury's consideration.[1]  *See* Motion (#121-1), pp. 6-8.

In opposing the motion in limine, Defendants focus solely on the issue of changed circumstances and assert that "*why Controller Wallin believed Mr. Ingram was not qualified to be her Chief Deputy is at the heart of the State of Nevada's defense.*"  Opposition (#136), p. 3 (emphasis in original).  Defendants dispute the United States' reading of the court's summary judgment order and argue that some of the court's language is sufficiently broad to allow for their theory that the change in administrations resulting from Wallin's election as Controller produced "a

---

[1]In a separate order (#138), the court has granted the United States' motion to bifurcate, having determined that issues of relief are for the court and not the jury, and with the recognition that certain categories of evidence may be admissible for only limited purposes.  The court's order is intended in part to preserve its gatekeeping role and ability to enforce its rulings on the scope of USERRA's provisions and the limited admissibility of certain evidence, with the ultimate aim of avoiding undue prejudice and confusion of the issues before the jury.

change in the qualifications of the Chief Deputy position, *i.e.*, a changed circumstance." *Id.* Defendants further contend that the court specifically recognized in footnote 4 of its opinion that Ingram's qualifications is relevant and appropriate evidence. *Id.*

In footnote 4 of the summary judgment order, the court indeed recognized that evidence and argument that Ingram is no longer qualified for the position of Chief Deputy under Wallin is relevant and admissible for the purpose of determining the appropriate position of reemployment under § 4313(a)(2) and (a)(4). *See* Order (#102), p. 15 n.4. But this is both undisputed and largely irrelevant. The court has granted the United States' motion to bifurcate the trial into an initial jury trial on liability followed (if necessary) by a bench trial on relief, and the instant motion in limine to exclude qualifications evidence is directed only at the jury phase on liability. Thus, the fact that qualifications evidence is admissible regarding the position of reemployment under § 4313 is irrelevant because that issue goes only to the court's determination of appropriate relief (*e.g.*, reinstatement and back pay). As discussed in more detail below, the question of position arises (if at all) only *after* the determination of whether Ingram had a right to reemployment under § 4312 that was violated, or whether no such right existed.

The real dispute here is whether evidence and argument regarding Ingram's qualifications for the Chief Deputy position is relevant and admissible for purposes of the "changed circumstances" affirmative defense for purposes of liability, which necessarily requires an examination of the proper scope and limits of the defense. And in that regard, the court rejects Defendants' argument, which reflects a gross misreading of the court's summary judgment order and which disregards and contradicts the statutory text.

Section 4312 provides the basic entitlement to reemployment rights and benefits under USERRA, but without providing for the substance of those rights and benefits. Provided the three procedural requirements are satisfied and no exception applies, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter." 38

3

U.S.C. § 4312(a). Three affirmative defenses, including the so-called "changed circumstances" defense, are provided for in subsection (d). "An employer is not required to reemploy a person under this chapter if" any apply. *Id.* § 4312(d)(1).

Section 4313 gives substance to the basic entitlement of § 4312, stating: "a person entitled to reemployment under section 4312 . . . shall be promptly reemployed in a position of employment in accordance with [a defined] order of priority." 38 U.S.C. § 4313(a). In other words, if a person satisfies the procedural requirements of § 4312 and no exception applies, then § 4313 grants to the servicemember the right to actually be reemployed and dictates the appropriate position of reemployment.

Section 4312 contains no mention of a servicemember's qualifications among the requirements for the basic entitlement to USERRA rights and benefits. Instead, only within § 4313's order of priority for positions of reemployment do a servicemember's qualifications for reemployment become relevant. The order of priority considers first whether the servicemember "is qualified" to perform the duties of the applicable escalator position or its equivalent (*i.e.*, "a position of like seniority, status and pay"), or the person's former position or its equivalent. *Id.* § 4313(a)(2)(A)-(B). But even if the person "is not qualified to be employed" in any of the primary reemployment positions under subdivision (a)(2) and "cannot become qualified with reasonable efforts by the employer," the person still has the right to be reemployed in an alternative position—*i.e.*, "in any other position which is the nearest approximation to [an (a)(2) position] which such person is qualified to perform." *Id.* § 4313(a)(4). Thus, so long as such alternative positions exist, nothing in § 4313 permits the employer to refuse *any* position of reemployment on the basis that a returning servicemember is no longer qualified for his *former* position. To the contrary, qualifications are relevant only in determining the appropriate *position* of reemployment under § 4313, not the existence of the right to reemployment generally. The basic entitlement to USERRA rights and benefits under § 4312 and the general right to be reemployed under § 4313 do not turn on qualifications.

The so-called "changed circumstances" affirmative defense is included in subsection (d) of § 4312 as an exception to the basic entitlement to USERRA rights and benefits. It states: "An employer is not required to reemploy a person under this chapter if . . . the employer's circumstances have so changed as to make such reemployment impossible or unreasonable[.]" 38 U.S.C. § 4312(d)(1)(A). In other words, if applicable, the defense operates to completely negate any right to reemployment in *any position* under § 4313. But according to the same terms, it applies only if "such reemployment"—meaning, reemployment in *every qualifying position* in the section § 4313 order of priority—is "impossible or unreasonable." *Id.* Thus, the fact that it may be impossible or unreasonable to reemploy a person in his or her *former* position under § 4313(a)(2) is insufficient for the changed circumstances defense to apply. So long as qualifying alternative positions exist for purposes of § 4313(a)(4), nothing in either §§ 4312 or 4313 permits the basic right to reemployment to be negated or denied on the basis that the servicemember is no longer qualified for his or her former position. Because the relevant right to "reemployment" is defined broadly to include not only the person's former position but also alternative positions under § 4313(a)(4), it must be impossible or unreasonable to place the person in *any and every qualifying position* under § 4313 for the changed circumstances defense to apply.[2]

---

[2] Conceivably, a case could arise where placement under § 4313 is impossible because the returning servicemember is no longer qualified and cannot become qualified to perform the duties of the (a)(2) position, and there is no eligible (a)(4) position, in that no alternative position exists or the person is not or cannot become qualified to perform any existing alternative position. In that exceptional circumstance, lack of qualifications may present a basis for application of the changed circumstances affirmative defense, insofar as the person's lack of qualifications for any existing position makes reemployment in accordance with § 4313 "impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). But of course, the impossibility would still have to be related as well to a change in "the *employer's* circumstances," *id.* (emphasis added), such as where layoffs have eliminated any alternative position for which the person might have been qualified.

In any event, this possibility is not presented by the instant case. Defendants contend that the change in administrations resulting from Controller Wallin's election constitutes a change in circumstances that makes Ingram unqualified for reemployment *as Chief Deputy*. But they have yet to make any argument or present any evidence to suggest that it would be impossible to comply with § 4313 by reemploying Ingram in an alternative (a)(4) position for which he is qualified, potentially including *but not necessarily limited to* the position of Chief Accountant.

In light of this statutory structure, Defendants' argument for considering qualifications in applying the changed circumstances affirmative defense is fundamentally flawed in numerous respects. To begin, the argument fails to appreciate the distinct operations of §§ 4312 and 4313 and, if accepted, would permit under § 4312 what § 4313 prohibits: the complete denial of the right to reemployment on the basis that the returning servicemember is not qualified for his former position.

Defendants' argument also fails to accord with the express text of the changed circumstances affirmative defense: "the employer's circumstances have so changed as to make such reemployment [under § 4313] impossible or unreasonable." 28 U.S.C. § 4312(d)(1)(A). Because the statute refers only to changes in the *employer's* circumstances, Defendants have correctly identified the pertinent change in circumstances as the change in administrations resulting from "the election of Controller Wallin." Opposition (#136), p. 3. But the court rejects Defendants' further contention that Wallin's "change in the qualifications of the Chief Deputy position" constitutes "a change in circumstances" that might qualify for application of the affirmative defense because "Ingram was not qualified to be her Chief Deputy" under the new standard. *Id.* Quite the contrary, based on the court's statutory analysis, Ingram's lack of qualifications to be Wallin's Chief Deputy would merely disqualify him for that *position* of reemployment in the § 4313 order of priority. It would do nothing to negate his right to reemployment generally.

Absent evidence showing that Ingram was unqualified and could not become qualified for *any and every* position within the § 4313 order of priority, establishing the changed circumstances affirmative defense on the basis of Ingram's lack of qualifications is an impossibility. As the

---

The closest Defendants come is proposing the issue: "Whether Ingram failed to meet the qualifications for any alternative position in the Controller's Office *of comparable pay and stature as the Chief Deputy Controller*?" JPTO (#105), p. 8, ¶ 10 (emphasis added). However, the italicized language is a reference to positions equivalent to Chief Deputy under (a)(2) ("the position . . . in which the person was employed . . . or a position *of like seniority status and pay*") and is too narrow in scope. Alternative positions under (a)(4) may include literally "*any* other position which is the nearest approximation." 38 U.S.C. § 4313(a)(4). Comparable pay and stature is prioritized, but not required.

6

United States contends, that Ingram was not qualified to be Wallin's Chief Deputy might establish that his reemployment was *undesirable* to Controller Wallin. But the exception requires an employer to establish that any reemployment would be "impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). As the very purpose of USERRA is to ensure reemployment to our military men and women returning from military service except in the most exceptional circumstances, the statute understandably makes the employer's desires irrelevant. *See also Leib v. Georgia-Pacific Corp.*, 925 F.2d 240, 245 (8th Cir. 1991) (noting that courts liberally construe USERRA's protections in favor of the returning servicemember).

In accordance with the above analysis, the court's summary judgment order specifically rejected Defendants' argument regarding qualifications, stating in footnote 4: "To the extent the Controller argues that the changed circumstances exemption should apply because Wallin considers Ingram unqualified for the position of Chief Deputy, the argument is misplaced." Order (#102), p. 15 n.4.

Despite this explicit rejection, Defendants contend that an implicit approval of their qualifications theory can be found in the court's statement that the disputed issues of material fact precluding summary judgment include "the extent to which the position of Chief Deputy is politically sensitive and entails responsibilities and duties that implicate important policymaking decisions, and the ramifications of a change in the position of Controller, and Wallin's election in particular, on the staff of the Controller's Office." *Id.* at 15, *quoted in* Opposition (#136), p. 3. Even assuming the court's descriptions of the issues, standing alone, could be construed as referencing Ingram's qualifications for the position of Chief Deputy, any such ambiguity was surely removed by the fact that the court appended footnote 4 to that very sentence, thereby unequivocally rejecting the materiality of Ingram's qualifications to application of the changed circumstances defense. Defendants' quotation of the passage for precisely the opposite position is inexplicable.

Defendants also take out of context and misconstrue the court's statement that "[t]he changed circumstances exemption is, after all, intended to address those situations where the

7

change in circumstances would have led to the employee's termination even if he had never left for military service." Order (#102), pp. 14-15, *quoted in* Opposition (#136), p. 2. Read in context, the statement is merely an assessment of the motivating principle behind the changed circumstances exception, certainly not an assessment of its substantive scope or an endorsement of Defendants' qualifications argument. Once again, the court's explicit rejection of that argument in footnote 4 should have made that abundantly clear. Moreover, Defendants' reading of the court's statement is plainly contrary to the statutory text. Whereas the statute plainly applies only in the exceptional case where reemployment is rendered impossible or unreasonable due to a change in the employer's circumstances, Defendants' reading would permit application of the defense based on virtually *any* change in circumstances that would have resulted in the employee's termination—regardless of whose circumstances changed or the possibility of reemployment. Plainly, that is not what the statue provides or what the court meant.

As reflected in the court's summary judgment order, the changed circumstances defense in § 4312 is primarily directed at *structural* changes to an employer's workforce (e.g., layoffs) that affect the employer's very ability to reemploy the returning servicemember. "The purpose of the exemption is to allow employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists." *Cole v. Swint*, 961 F.2d 58, 60 (5th Cir. 1992) (emphasis added). The exemption may apply, for example, "where there has been an intervening reduction in force that would have included the employee," 20 C.F.R. § 1002.139(a), or where the employee has engaged in conduct while on military leave "that would be cause for dismissal at any other time." *Hays*, 753 F. Supp. 2d at 899. "The employer may not, however, refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." 20 C.F.R. § 1002.139(a). Nor may the employer refuse reemployment on the basis that the employer finds the servicemember simply no longer qualified for his former position (as opposed to being subject to termination for cause). Lack of

qualifications goes to the *position* of reemployment under § 4313, not the employer's *ability* to reemploy the person under § 4312(d).

This analysis forms the basis for the court's summary judgment ruling that the election of a new public official might qualify as a change in circumstances making reemployment impossible or unreasonable. *See* Order (#102), pp. 14-15.  As the court noted: "In the context of public offices, elections can have consequences not only for outgoing officials but also for their staff, depending on the nature of the office and the nature of the positions within that office." *Id.* at 15.  As noted by Defendants, an apt example would be a change in presidential administrations and the corresponding change in staff in the West Wing of the White House.  While certain positions may remain across administrations (e.g., chief of staff, communications director, etc.), it is the nature of such positions that the employment of the persons holding them naturally and customarily ceases along with a change in administrations following an election, regardless of whether the individuals are qualified to perform the duties of their positions.

But not all government offices and jobs are affected in the same manner by an election. While a presidential election may have consequences for cabinet officials and other political appointees, such consequences do not necessarily flow to career staff within those same departments.  As the court noted in its summary judgment order, USERRA expressly applies to successor employers and to governmental offices, with the consequence that the employer cannot avoid its reemployment obligations merely because a new boss is in charge—"even if the boss is an elected official." Order (#102), p. 14.  More is required.

Accordingly, Defendants will be on firm legal footing to the extent they may seek to establish that the election of Controller Wallin resulted in structural changes to positions within the Controller's Office that would have necessarily or customarily resulted in a succession of the Chief Deputy and possibly other positions, regardless of the particular qualifications of the individuals inhabiting those positions.  By contrast, Defendants' theory that the changed circumstance defense

should apply because "Controller Wallin believed Mr. Ingram was not qualified to be her Chief Deputy" is without legal foundation. Opposition (#136), p. 3 (emphasis removed).

In light of the court's analysis of the text of the exception and the interplay between §§ 4312 and 4313, the court rejects Defendants' arguments regarding the scope of the changed circumstances exception and its application to this case. As a matter of law, the court concludes that Defendants' changed circumstances theory is untenable and immaterial to the jury's consideration of the defense for purposes of determining whether Defendants violated USERRA by failing to reemploy Ingram. The United States' motion in limine will be granted accordingly.[3]

### (5) Whether Ingram rejected the Chief Accountant job offer

Defendants propose as an issue for trial whether "Ingram unreasonably reject[ed] the offer of the Chief Accountant position." JPTO (#105), p. 8, ¶ 14. The United States moves to exclude the presentation of any evidence or argument on this issue on the ground that the court determined on summary judgment that Wallin "*withdrew*" the offer. Motion (#121-1), p. 8 (citing Order (#102), p. 22). Defendants dispute that the offer was ever "formally 'withdrawn,'" and they seek to offer evidence that the offer "was never accepted by Mr. Ingram—ever." Opposition #136, p. 3. As they did at summary judgment, Defendants contend that the offer was "contingent upon Mr. Ingram [accepting the offer] in writing and demonstrating his qualifications by passing the Department of Personnel test," and Ingram's failure to do so constitutes a failure to accept the offer. *Id.* Defendants further contend that whether Ingram ever rejected the offer is relevant to the disputed issue of material fact noted by the court in denying summary judgment—*i.e.*, whether the offer of the Chief Accountant position was a "*bona fide* attempt[] to settle a genuine dispute[] over the applicability of USERRA's reemployment protections." *Id.* at 4 (citing Order (#102), p. 23).

---

[3] Neither party addresses the admissibility of evidence and argument on qualifications in regard to the issue of willfulness for purposes of imposing liquidated damages. To the extent such issues may arise at trial, the court will address them at that time.

Contrary to Defendants' argument, whether the offer was withdraw, rejected or not properly accepted, and whether the offer constituted a bona fide settlement offer or an unconditional employment offer, are distinct issues. The former addresses the parties' conduct in regard to the offer. The latter addresses the type of offer that was made and the Controller's motive in making it. *See* 38 U.S.C. § 4311(c)(2) ("An employer shall be considered to have engaged in actions prohibited . . . under subsection (b), if the person's [protected conduct] is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's [protected conduct]."). If, as Defendants presumably seek to show, the offer was a bona fide offer of settlement made with the honest but uncertain belief that no reemployment was required by USERRA, it is a moot point whether the Controller withdrew the offer or Ingram rejected or failed to accept it. In that circumstance, no retaliation claim may be maintained because the required nexus to protected conduct is absent. *See* Order (#102), p. 23 ("the employer would have denied reemployment anyway and made the offer solely to settle the person's disputed claim to even greater benefits"). The waiver or rejection issue thus becomes relevant only if the jury determines that the Chief Accountant offer was not an offer of settlement but rather was made with the belief that some right to reemployment existed.

In that case, the issue has been foreclosed. On summary judgment, the court expressly "reject[ed] the Controller's argument that . . . Ingram waived any interest in the [Chief Accountant] position by rejecting the Controller's offer or by failing to accept it fully and in writing." Order (#102), p. 16. The court found that the Controller's attempt to impose additional conditions on a service member's entitlement to reemployment rights and benefits was inconsistent with USERRA's text, and that the undisputed facts before the court established that Ingram satisfied all procedural requirements and that its was "the Controller who then refused to allow him to begin work based on her own belief that Ingram would not be satisfied with the Chief Accountant position given his insistence on being reemployed as Chief Deputy." *Id.* at 16-17; *accord id.* at 22.

Accordingly, the court rejects Defendants' attempt to revive this resolved issue of rejection or waiver and will grant the motion in limine.

### (6) Ingram's last day of work in the Controller's Office

The United States next seeks to exclude evidence or argument regarding whether May 17, 2003, was the last day Ingram reported to work in the Controller's Office. The United States contends that the issue is conceivably relevant only to the five-year service issue, which was resolved on summary judgment, and that it is irrelevant to any remaining trial issues, including the whether changed circumstances affirmative defense applies, retaliation, or damages.

To the extent the United States seeks to avoid the use of such evidence for an improper purpose (*e.g.*, to suggest that no right to reemployment should attach based on the length of Ingram's pre-service employment or his military service) such use will of course be prohibited. As Defendants contend, however, the fact is pertinent background information that may assist the jury in understanding the timing of events, without substantial danger of unfair prejudice or confusion of the issues. Accordingly, the evidence may be offered only for that limited purpose.

### (7) State term limits

The United States next moves to exclude any evidence or argument regarding the fact that State term limits precluded Kathy Augustine from holding office as Controller after December 31, 2006. Defendants contend the evidence is relevant to the changed circumstances defense. While the fact and ramifications of Wallin's election may support application of the changed circumstances defense, the historical details concerning how she was elected are immaterial. Accordingly, it would be improper to suggest to the jury that Ingram's right to reemployment turns in any material way on the fact that Augustine was term limited. Nonetheless, the fact does provide pertinent background information that may assist the jury in understanding the course of events, without substantial danger of unfair prejudice or confusion of the issues. Accordingly, the evidence may be offered only for that limited purpose.

**(8)  Voluntary extensions of military deployment**

The United States next moves to exclude any evidence or argument related to Ingram's voluntary extensions of his military deployment, specifically including five "Volunteer Statements to extend active duty" listed as proposed exhibits by Defendants. *See* Motion (#121-1), p. 10; JPTO (#105), p. 15-16, ¶¶ 19-23.  As the United States argues, on summary judgment the court specifically held that the voluntariness of Ingram's service beyond his initial deployment is, as a matter of law, "immaterial" to his entitlement to reemployment rights and benefits under USERRA. *See* Order (#102), p. 9; 38 U.S.C. § 4312(h).

For the first time, Defendants invoke NRS 227.100(2), which provides: "the Deputy State Controller shall devote his or her entire time and attention to the business of his or her office and shall not pursue any other business or occupation or hold any other office of profit."  They then argue, rather cryptically, that Ingram's voluntary re-enlistments "raise[] legitimate issues under NRS 227.100" and are relevant to willfulness and to "whether there was a *bona fide* dispute over USERRA's applicability."  Opposition (#136), p. 5.

Defendants' argument is hardly a model of clarity.  If they seek to present evidence and argument that the voluntary nature of Ingram's service undermines his entitlement to USERRA rights and benefits under § 4312(a), whether based on NRS 227.100 or otherwise, the argument is foreclosed by the court's determination on summary judgement that USERRA's procedural requirements have been satisfied.  Also, if Defendants seek to raise a legal argument concerning the interplay between USERRA and Nevada law, such issues are outside the province of the jury.

The issue of willfulness is more nuanced, however.  A violation of USERRA is willful if "'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 133 (1985)), *adopted in* H.R. Rep. No. 103-65, at 38 (1994), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2471.  An intent to violate the statute is not necessary; but it is also not sufficient that the employer simply knew of its potential applicability.

13

*Thurston*, 469 U.S. at 126-28 & n.19. Also, statutory violations are not willful if the violators "acted reasonably and in good faith in attempting to determine whether their plan would violate the [statute]." *Id.* at 129. Accordingly, evidence concerning Controller Wallin's deliberations regarding USERRA's applicability is admissible on the issue of wilfulness. For example, legitimate topics of evidence and argument may include Wallin's consideration of legal authorities and whether she reasonably and in good faith (but mistakenly) believed that the voluntariness of Ingram's re-enlistments was material to USERRA's application. In this regard only, the motion in limine will be denied.

**(9)  One-year limit on damages**

The United States moves to exclude any evidence or argument related to whether Ingram's compensatory damages should be limited to one year, contending that the court resolved the issue in its favor on summary judgment. Motion (#121-1), p. 13.

To the extent the United States' motion is directed at preluding presentation of evidence or argument to the jury on damages, the motion is rendered moot by the court's order granting the United States' motion to bifurcate and to hold a bench trial on damages. To the extent the motion is directed at the presentation of evidence and argument during the bench trial on damages, the motion shall be denied. As Defendants argue, in addressing the one-year issue on summary judgment, the court merely denied Defendants' motion to cap compensatory damages as a matter of law. *See* Order (#102), pp. 24-25. The court's ruling did not address and does not preclude Defendants from arguing *on the facts* that damages should be limited to one year, except perhaps to the extent that any such argument could not run afoul of USERRA's prohibition against discrimination or retaliation for the exercise of USERRA rights. *Id.* at 24.

**(10)  Prior lawsuits or complaints**

The United States moves to bar any evidence or argument related to any administrative complaints or lawsuits filed by Ingram against Controller Augustine in 2003 alleging violations of USERRA and Title VII, specifically including 12 exhibits proposed by Defendants. *See* Motion

(#121-1), pp. 13-16; JPTO (#105), p. 13.  Defendants disclaim any intent to introduce evidence regarding any prior USERRA lawsuits, but they do seek to admit the complaints of sexual harassment against Augustine.  *See* Opposition (#136), p. 6 & n.2.

The court finds that Defendants have failed to identify virtually any probative value of such evidence to the triable issues actually remaining in this case, and that any probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues before the jury.  Regarding the changed circumstances defense specifically, although Defendants have identified Wallin's replacement of the "scandal-ridden" Augustine administration as a potentially qualifying change in circumstances, Defendants fail to identify any involvement by Ingram in any such scandals that would render his reemployment "impossible or unreasonable" some five years later.  The motion in limine will therefore be granted.

**(11)  Written reprimands**

The United States moves to exclude evidence or argument related to two letters of reprimand issued by Controller Augustine to Ingram in 2003, as well as a 2008 letter from Ingram to Wallin regarding these letters.  Defendants contend the letters are relevant to Ingram's "qualifications to be the Chief Deputy" under Wallin and probative of damages.  As the court has already determined that Ingram's qualifications to be Wallin's Chief Deputy are irrelevant to changed circumstances and only relevant to damages, the motion in limine will be granted insofar as it seeks to bar the presentation of this issue during the jury phase.

**(12)  Unsent resignation letter**

The United States moves to exclude evidence or argument that Ingram drafted a letter of resignation in 2003, about a week after he was hired by Augustine and prior to his deployment, that he never sent or delivered.  Defendants represent that Ingram acknowledges in the letter that he is not suited to be the Chief Deputy Controller, although Ingram did not in fact resign.  Defendants contend that the letter is probative of damages and to his qualifications for the position.  While the court agrees, because Ingram's qualifications for the Chief Deputy position are relevant only

regarding damages, the motion in limine will be granted insofar as it seeks to bar the presentation of this issue during the jury phase.

**(13) Ingram's duty stations**

The United States moves to exclude evidence or argument related to Ingram's military service duty stations, contending that duty stations are irrelevant to any remaining issues or to entitlement to USERRA rights and benefits generally and that such evidence would only confuse the issues and risk unfair prejudice. Defendants agree that USERRA makes no distinctions based on duty stations and that "*All* military service is honorable." Nonetheless, they argue that "'military service' or 'veteran' implies actual combat," particularly when service is during a time of war, and that Ingram's actual duty stations should be admissible because the absence of such evidence "may cause the jury to feel undue empathy or sympathy for [him] under the mis-belief that he served in a combat role."

The court rejects Defendants' tortured logic. Giving with the one hand, Defendants purport to agree with the equality of combat and non-combat service for USERRA purposes. Taking with the other, they contend that the assumption that Ingram served in combat role would engender sympathy that is unworthy of a non-combat servicemember.

Ultimately, the parties agree that Ingram's duty station is legally irrelevant under USERRA generally, let alone any issues remaining for trial. To the extent there may exist any danger of undue prejudice, the parties may propose jury instructions addressing the issue. However, the motion in limine will be granted.

**(14) Length of pre-deployment employment**

The United States moves to exclude as irrelevant any evidence or argument that Ingram was only employed with the State of Nevada for approximately four months, from February 17, 2003, to June 1, 2003, before he was called to active duty.

The brevity of Ingram's employment and any attendant lack of qualifications (*i.e.*, experience and knowledge of Nevada's government) is relevant to relief, particularly including the

order of priority for positions of reemployment under § 4313, as well as back pay and benefits. The court has already rejected Defendants' argument, however, that qualifications are relevant to liability. Furthermore, as the United States argues, USERRA includes no requirement regarding the length of pre-deployment employment—only the length of the absence for military service. The motion in limine shall therefore be granted insofar as Defendants seek to argue that Ingram's length of pre-deployment employment should bear on his right to reemployment rights and benefits under USERRA. The dates of Ingram's employment are not entirely off-limits, however, as they provide some pertinent background information that may assist the jury in understanding the timing of events, without substantial danger of unfair prejudice or confusion of the issues. Accordingly, the evidence may be offered for that limited purpose.

**(15) Tenth Amendment**

As the court noted from the bench, Defendants' Tenth Amendment argument is an issue of law for the court, including any disputed issues of material fact that may remain. Thus, the United States' motion to preclude any argument regarding application of the Tenth Amendment during the jury phase shall be granted.

**(16) Whether reemploying Ingram is "currently impracticable"**

The United States moves to exclude any evidence or argument related to Defendants' proposed issue of whether reemployment of Ingram as Wallin's Chief Deputy is "currently impracticable." As the United States argues, the *current* practicability of reinstating Ingram is a distinct question from whether Ingram should have been reemployed upon his return from military service in 2008. The issue is therefore solely material to prospective relief, which is the province of the court during the bench trial on damages. Accordingly, to the extent the motion seeks to exclude such evidence or argument during the initial jury phase, the motion will be granted.

**(17) Qualifications for any alternative position**

The United States moves to exclude any evidence or argument related to Defendants' proposed issue of "[w]hether Ingram failed to meet the qualifications for any alternative position in

the Controller's Office of comparable pay and stature as the Chief Deputy Controller." JPTO (#105), p. 8, ¶ 10. As the court has already noted, *see supra* fn. 2, the proposed issue is a clear reference to the order of priority for positions of reemployment under § 4313(a), which is an issue pertaining to relief, not liability, and is therefore solely within the province of the court. Thus, the United States' motion to preclude presentation of such evidence or argument during the jury phase on liability shall be granted.

IT IS THEREFORE ORDERED that the United States' Motion in Limine to Exclude Certain Evidence at Trial (#121) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 30th day of April, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE